Good morning, Your Honors. I'm David Clark on behalf of the Plaintiff and Appellant. I would like to reserve two minutes and rebuttal, so I'll proceed forthwith. We're here on appeal from a motion to dismiss that was granted based on improper venue based on enforcement of forum selection clauses in two contracts. If those forum selection clauses are not enforceable, then venue was concededly proper in the Southern District. I might add that it's undisputed that both contracts were negotiated, entered into, and executed, likewise in San Diego, where the defendant is itself headquartered. We had raised breach of contract, breach of implied covenant, and common count claims in the complaint based on the contracts. We had also raised fraud, unfair competition, and tortious interference claims that were outside of, not dependent on, not derivative of the contract claims. In the aggregate, on the face of the complaint, do the tort claims meet the statutory minimum for diversity jurisdiction dollar amount? Yes, sir. How much are they? They're well in excess of $75,000. Well, you didn't allege any specific dollar amount in the complaint. No, we didn't. I mean, typically, we normally would not. It's subject to proof, but as an officer of the court, I will represent that they were. But they're not pleaded. In other words, this was a judgment on the pleadings, right? It was a motion to dismiss based on the pleadings. Okay. So I can't go beyond the pleadings, right? Correct. And we had not been given, nor had we asked for leave to amend. Okay. And there was no evidentiary hearing held below, which happens sometimes in these issues. Now, I don't go ahead. I finished answering Judge Beezer's question. I have finished, yes. I don't, you know, generally, forum selection clauses are enforceable. Why? Generally, but as. Why isn't this one enforceable? Because we meet the test that you laid out in the Jones case. Forum selection clauses are not enforceable if they're the product of fraud or overreaching. Where's the fraud or overreaching? In this, you're dealing with two very sophisticated corporate entities. The overreaching in particular was established by the declaration of the chief executive officer of my client who testified in his declaration that these contracts were, quote, nonnegotiable, close quote, and presented on a, quote, take it or leave it basis. What's wrong with that? Yeah. That generally is sufficient to meet the test for overreaching, if not unconscionability. Between these corporate entities? Yes. That's one prong under the Jones case. The Jones case also has three. I'll be honest with you. That's a difficult argument. Yeah. Let me move on then. The Jones case also has three other alternative prongs that if you meet any one of them, then the forum selection clauses are not enforceable. The second one is whether they're unreasonable or unjust. And as we pointed out, again, and it's in the record, virtually undisputed, the defendant is located in San Diego. Its primary witnesses are located in San Diego. The damages remedies to which my client would be entitled either under the contract claims or the tort claims would be severely curtailed. Now, let's see. Your client is a Mexican corporation, correct? But it filed suit in San Diego and it's willing to appear in San Diego. And the million pounds of shrimp were all in Mexico, weren't they? The shrimp were delivered to Ocean Garden in San Diego. No. They were raised in Mexico, weren't they? Yes. Yes, Your Honor. I'm sorry. I did not hear you correctly. Yes. They were harvested and farmed in Mexico. Any evidence of any duress in forcing somebody to sign a contract here? I mean, I would say that the record doesn't show any duress. I mean, as Justice Paya said, these were businessmen. I know. My emphasis is more on the overreaching part rather than outright fraud or duress. The third alternative under Jones is that if enforcement of foreign selection clauses would contravene a strong public policy. And it seems to me to be self-evident that where you've got a contract entered into in California, signed by the parties in California, where performance is in part in California, California has a strong public policy of enforcing contracts that are made in this state. Mr. Clark, does your client have standing to invoke the public policy of California? In this situation, I think yes, because we've sued here. The defendant is domiciled here. And all we're asking, really, is that a trial of our claims be had in the neighborhood of the defendant. Well, to the extent that public policy exists that you've described, isn't it there for the purpose of protecting California citizens and residents? I would not disagree with that observation. Let me ask you about the tort claims. Yes. So you started off focusing on the tort claims for just a bit. But, you know, under our case law, the test is, under Minetti-Ferro, is whether or not those tort claims relate to an interpretation of the contract that contained the foreign selection clause. And at least at least one of them. So several of them. As I read the complaint, which incorporates, you know, there's a method of pleading. You allege all the facts, then you allege the particular counts. And in each count, you incorporate all of the facts. And it seems pretty clear that a couple of those tort claims turn on an interpretation of the contract. Now, there may be one or two that it may not be so clear. So why don't you tell me? Right. That's what I was going to address. Certainly, at least a couple of them do not turn on the contract at all. The fraud claim, for example, involves misrepresentations after the contracts were entered into. And, therefore, separate and apart from the contract. But you didn't... The tortious, and putting aside the 17-200 claim, assuming for the sake of argument that we might not have standing, the tortious interference with business tort claims, of which we've put twice, also have nothing to do with the two contracts at issue. Those are based on defamatory misrepresentations that we allege that the defendant published to others, which harmed our existing and prospective economic relationships with those other parties. And all of that is stranger to the contracts. Mr. Clark, you did not argue below that the fraud claims were outside the scope of the contract, did you? Yes, we did. And I thought I had cited, Your Honor, to the applicable pages in the record in our reply brief. Okay. In fact, when I was reading them overnight, they are in the two footnotes. I noticed I'm encroaching on my two minutes. Yes, you can... Let me just say one other thing. In terms of the letter briefs that you solicited as to whether these clauses unambiguously relegated venue to Mexico, or whether if there was any ambiguity, should it be construed against the defendant who drafted the contracts? Our answer, obviously, is yes as to the latter question and no as to the former. And let me just state this. Both form selection clauses indicate that they only apply to matters concerning construction, performance, or interpretation of the contracts. So they don't reach the tort claims. That's one significant ambiguity. The other significant ambiguity is that generally, as this Court has held in the Dockside case, you typically have to use some magic words such as mandatory jurisdiction, exclusive jurisdiction, irrevocable jurisdiction, solely or only in Mexico, in order to meet the Dockside standard. And these clauses do not have that sort of exclusivity or proclivity to relegate us to jurisdiction in Mexico. And that's why I think under the Hunt-Wesson case, which was also decided by this Court, that the reservation of jurisdiction in those clauses was not exclusive. So I think we can be remanded for trial in San Diego. Okay, thank you. I'll give you a minute for rebuttal. You have 20 seconds. Well, I'll just add a few extra seconds for good measure. Good morning, Your Honors. Jeffrey Shohat, DLA Piper, on behalf of the Respondent Ocean Garden Products. There are three recognized grounds on which a form selection clause can be denied enforcement in a particular situation. And I might add, by the way, before I get to that, on the ambiguity question, the ambiguity was never raised below by the appellant. In fact, it was never even raised on appeal. It was raised for the first time by this Court in a letter to counsel. I would suggest that that's the strongest evidence, if there need be any evidence, that there was no ambiguity perceived. And I would also note that the version that you're looking at is an English translation of a Spanish document. So what you're seeing are English words that have been translated from Spanish. And so in the interpretation of the English words, I would suggest it's very difficult for anybody to read the English and suggest that it's ambiguous. If there's an ambiguity, it would have to be looking at the Spanish language version, which may be very clear, even though the literal translation could create some ambiguity. So I really think that the ambiguity issue is not part of what we're here today to discuss. The three grounds, of course, that have been recognized in the case law, and I'm relying primarily on the Supreme Court decision in Bremen and this Court's decision in Murphy, are where enforcement would be manifestly unreasonable or unjust. There's no evidence of that in this case. I'd be happy to take any questions on that. I don't need to spend a lot of time on the record. There is none, as Your Honors have pointed out. These are two sophisticated business entities. We're talking about a contract involving a million pounds of shrimp. This is not a consumer being dragged to some distant forum in some consumer contract of adhesion because the power of the company to impose those conditions was visited on the consumer. Would the tort causes of action be available in Mexico? I don't know the answer to that question. And do you know whether the tort claims are sufficiently pled to show $75,000? They are not. Pardon? They are not. There's nothing in the pleading that would support the minimum jurisdiction. Was there anything before the district court that would show one way or the other? No, Your Honor. So it's really a facial challenge to the complaint. Correct. Okay. And the tort claim. And on the point about the fact that there are tort remedies and other remedies in the contract that may not be available in Mexico, and that's just speculation, but there was some, there was an affidavit submitted by the appellant that the contract remedies in Mexico, of which there are remedies. There's no, he's not saying that he doesn't have a remedy. He's saying that there's some reduction or limitation from the contract remedy that he would have in the United States. And that may be, but that's not evidence that there is no remedy available or that there's severe hardship, manifest injustice. And I'd also point out that that could very well be a negotiated part of the arrangement. In other words, we may have, it's speculation, there's nothing in the record, but I think I'm entitled to the benefit of the argument that when the parties sit If they arrange for a forum that reduces the exposure to one party, then that's a negotiation that was presumably done during the course of the contract. And maybe there were other concessions. Maybe the price was increased because there was less exposure, because Mexico was not a severe jurisdiction for breach of contract. We don't know that. But that's part of the negotiation, and it shouldn't be upset, because one party now says they don't want to live up to that arrangement that they agreed to or put another way. If there were limitations on remedies in Mexico at the time, that was known to the parties and presumably taken into consideration when they negotiated the contract. So there's nothing on that fraud or overreaching that would support non-enforcement of this agreement and the district court so recognized. The clause was not manifestly unreasonable or unjust. And the so-called important public policy which the plaintiff appellant asserts in which Judge Campbell made mention of the fact that he doesn't have standing, the client doesn't have standing to raise that. The other point is really it goes way too far. I mean, every state has a policy to try and enforce, protect its citizens and contracts that are entered into in its jurisdiction from proper enforcement. If that was a strong public policy that precluded the enforcement of a forum selection provision in another jurisdiction, then there could never be a forum selection provision that provided for the litigation of a contract outside the jurisdiction in which the contract was entered into. So that can't be a strong public policy that vitiates the enforcement of a forum selection provision. So I want to turn then really to the non-contract-based claims. I really think that there is nothing in this record that would support the non-enforcement of the clause as to the contract-based claims, which include the common count claims and the breach of contract claim. Well, Mr. Shull, let me focus you on a specific issue. Sure. The Minetti-Ferro case says that whether or not the tort claims are covered by this clause depends on whether resolution of those claims would relate to an interpretation of the contract. Count Satan 9 alleged that your client said things to other U.S. purchasers that discouraged them from buying from the plaintiff. Right. How does that claim require interpretation of the contract? Well, first of all, I would agree that that is the toughest part of the case. That is the only part of the case that has, in my opinion, any issue that needs discussion. I would remind the Court that this particular forum selection clause was broader, and it talked about enforcement, interpretation, or construction of the contract. And so I think to give any claim that touches on the enforcement, interpretation, or construction of the contract would be within the express terms of the forum selection provision. Now, the plaintiff, as the Court below mentioned and as this Court mentioned, wrapped all the claims together, pled each and every contract-based allegation, each and every allegation that related to the enforcement, construction, and interpretation of the contract in that tort claim. And that was the basis for the district court's inclusion of that tort claim as part of the claims that all went back, that were dismissed, because as the plaintiff pled the claim. And presumably when a plaintiff pleads a claim, they plead the facts that are essential to the support of the cause of action. That was the basis on which the district court judge included it. They never argued for any severance of that claim. They never argued for leave to amend, which they would have to do. On its face, I would suggest it must be dismissed, because on its face the allegations in support of it include matters that would go to the interpretation, enforcement, or construction of the contract. They never sought leave to amend to state allegations that might not implicate the construction, enforcement, or interpretation of the contract. Well, that argument is based entirely on the incorporation by reference in the first paragraph of Counts 8 and 9, right? Yes, sir. Now, when they incorporate by reference, they're also incorporating paragraphs 42 through 46, which do talk about this alleged tortious interference. That's true. Is there any reason we should conclude that they intended to incorporate the breach of contract allegations in this tort claim that really had nothing to do with the contracts? Well, if they weren't germane to the tort claim, then they shouldn't have been incorporated by reference. And they were incorporated. They didn't have to incorporate paragraphs 1 through 32 of the complaint, which went to the contract-based claims. They didn't have to do that. They did. It was in the pleading. So I would suggest on this record that this Court would be going beyond what it can do to simply ignore what was the plaintiff alleged to be the elements of the claim and the basis for the complaint and what the district court based its decision on and simply sort of blew pencil out of the complaint, the allegations that this Court may think are not germane to the tort claim, even though the plaintiff did think that they were germane. Let me just make sure I understand your position. If we conclude that we can get past that incorporation by reference, I'm not hearing you argue any other basis for asserting that Counts 8 and 9 require construction of these contracts. Am I correct? You're correct. Okay. You're correct. Certainly the 17-200 claim, which he also argues is outside the scope of the contract because it was executed or because the conduct was after the contract and unrelated, the predicate acts of unfair competition are the breaches of the two contracts. So the problem is with the two interference claims, if any. Pardon? The interference claims. Yes. I agree. The interference claims, some of the acts, some of the allegations are outside the scope of the contract. Others are within the scope of the contract. I think what we're doing here now is trying to lawyer the case for the plaintiff and conclude that the plaintiff was simply mistaken, the allegations that the complaint that the plaintiff depended upon and included in his complaint shouldn't have been in there and we should forgive him and re-amend the complaint, amend the complaint for the plaintiff to exclude those allegations that he didn't really need to include. I think that's what we're doing here. And, again, I would suggest that would be ‑‑ I have no authority for that, and I don't think that that would be the right way to get to this. The way to get to it is, if you think so, is perhaps remand and leave him, give him leave to amend. That could possibly be done, but, again, he hasn't asked for it. My time is up. Okay. Thank you very much. Thank you for your attention. Appreciate your argument. Just briefly, and see if I can clear up the damages issue and the incorporation issue. Justice Fieser, I was looking at our complaint during the argument, and, in fact, we have stated specific damage amounts for the tort claims in the prayer for relief, which is appears at pages 18 and 19 of the excerpts of record. There is a specific dollar amount. It's in excess of $4 million. Well, but there isn't for counts 8 and 9, right? I know you've got the $4 million in counts 1 through 7, the $4 million amount, but it's not in 8 and 9, and it's not in the prayer for relief on 8 and 9, is it? You are correct. I was focusing on the 5th, 6th, and 7th. All right. There is not a specific amount in the 8th or 9th. A minute ago, you avowed that the amount in dispute for the tort claims is more than $75,000. Does that apply to 8 and 9? Yes. And in terms of the incorporation clause, you know, just because the prior allegations were incorporated into the tort claims does not mean that they're at issue or in play. I mean, they're really irrelevant. They're redundant. They don't have anything to do with either pleading or proving the elements of those tort claims. So the fact that they were realleged, to me, is kind of a no harm, no foul at most. So you wouldn't set this complaint up as somewhat of a model federal court complaint? Is that what you're telling me? Apparently not. All right. Okay, that's fine. Thank you very much. I appreciate your – we appreciate your arguments on both sides, and the matter is submitted. Thank you, Your Honor. Thank you. Our next case for argument is Copey v. Ryan.
judges: Beezer, Paez, Campbell